NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000593
02-AUG-2017
02:24 PM

NO. CAAP-12-0000593

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KONA'S BEST NATURAL COFFEE LLC,
a Hawai'i limited liability company,
Plaintiff/Counterclaim-Defendant/Appellant/Cross-Appellee,
v.
MOUNTAIN THUNDER COFFEE PLANTATION INT'L, INC.,
a Hawai'i corporation, TRENT BATEMAN and LISA BATEMAN,
Defendants/Counterclaimants/Appellees/Cross-Appellants,
and
NATURESCAPE HOLDINGS GROUP INT'L, INC.,
Defendant/Appellee/Cross-Appellant,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-50, DOE ENTITIES 1-50,
Defendants.

MOUNTAIN THUNDER COFFEE PLANTATION INT'L INC.,
a Hawai'i corporation, TRENT BATEMAN; LISA BATEMAN,
Third-Party Plaintiffs/Appellees/
Cross-Appellees,
vs.
MICHAEL ROBERTS and BRENT HIGHT,
Third-Party Defendants/Appellants/Cross-Appellees,
and
MARIN ARTUKOVICH, KOA COFFEE COMPANY, LLC;
JOHN DOES 1-10; JANE DOES 1-10;
DOE CORPORATIONS 1-50; DOE ENTITIES 1-50,
Third-Party Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 08-1-098K (Kona))

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Reifurth, J.,
with Ginoza, J., concurring separately)

INTRODUCTION

I.

This appeal arises out of the breakdown and eventual termination of negotiations two between Kona coffee businesses regarding a potential asset purchase agreement. Kona's Best Natural Coffee LLC (Kona's Best) was involved in negotiations with Mountain Thunder Coffee Plantation Int'l, Inc. (Mountain Thunder) to purchase the assets of Mountain Thunder. Michael Roberts (Roberts) held an ownership interest in Kona's Best and Brent Hight (Hight) was the general manager of Kona's Best. Trent Bateman (Trent) and Lisa Bateman (Lisa) (collectively, the Batemans) were the owners of Mountain Thunder. After the negotiations regarding the asset purchase were terminated, Mountain Thunder transferred assets to Naturescape Holdings Group Int'l Inc. (Naturescape), a company owned by the Batemans' daughter, Brooke Decker (Brooke).

Kona's Best filed a First Amended Complaint against Mountain Thunder, Trent, Lisa, and Naturescape. Mountain Thunder, Trent, and Lisa (collectively, the Mountain Thunder Defendants) filed a First Amended Counterclaim against Kona's Best and a First Amended Third-Party Complaint against Roberts and Hight.[1] The parties' claims were resolved through decisions rendered by a jury, decisions on equitable claims rendered by the Circuit Court of the Third Circuit (Circuit Court), and rulings by the Circuit Court.[2]

Kona's Best, Roberts, and Hight (collectively, the Kona's Best Appellants) filed an appeal from the Circuit Court's

---

[1] The Mountain Thunder Defendants' original Third-Party Complaint named Marin Artukovich (Artukovich) and Koa Coffee Company, LLC (Koa Coffee) as third-party defendants along with Roberts and Hight. However, the claims against Artukovich and Koa Coffee were dismissed and are not at issue in this appeal.

[2] The Honorable Ronald Ibarra presided.

2

First Amended Final Judgment (Amended Judgment). On appeal, Kona's Best argues that the Circuit Court erred by denying Kona's Best's motion for judgment as a matter of law on the Mountain Thunder Defendants' claims for (1) tortious interference with prospective business advantage and (2) breach of contract. Roberts and Hight argue that the Circuit Court erred by failing to award Roberts and Hight attorney's fees and costs for their successful defense of the Mountain Thunder Defendants' First Amended Third-Party Complaint.

In their cross-appeal, the Mountain Thunder Defendants raise numerous points of error and argue that the Circuit Court erred in: (1) instructing the jury on their unfair competition claim; (2) dismissing their claims for (a) unfair competition; (b) misappropriation of trade secrets; (c) promissory estoppel -- financing; (d) fraudulent misrepresentation; (e) promissory estoppel -- nonpayment; (f) unjust enrichment; (g) defamation; and (h) intentional infliction of emotional distress; (3) admitting analysis prepared by Kona's Best's accountant, Steven Kaufman, and expert testimony based on this analysis; and (4) failing to apply the net judgment rule in entering its Amended Judgment.

In its cross-appeal, Naturescape contends that the Circuit Court erred in: (1) denying Naturescape's motion for separate trials; and (2) entering judgment against Naturescape on Kona's Best's fraudulent transfer claim.

II.

The posture of this appeal has been complicated by bankruptcy proceedings filed against Mountain Thunder and Naturescape. After receiving notice from the Kona's Best Appellants that involuntary bankruptcy petitions under Chapter 11 of the Bankruptcy Code had been filed against Mountain Thunder and Naturescape, this court directed the parties to this appeal to provide information regarding the status of the bankruptcy proceedings; the effect of the filing of the bankruptcy petitions on this appeal, including whether further proceedings in this

3

appeal are stayed; and whether steps are being taken in the bankruptcy proceeding to lift any applicable stay. We also requested that Elizabeth A. Kane (Kane), Trustee for the estates of Mountain Thunder and Naturescape in the bankruptcy proceedings (Trustee Kane), provide similar information as well as whether Trustee Kane planned to intervene or assert an interest in this appeal.

After receiving and considering the responses from the parties and Trustee Kane, this court issued an "Order Regarding Bankruptcy Stay" (Order) on March 7, 2017. In the Order, we stated:

> 11 U.S.C. § 362 stays the "commencement or continuation . . . of a judicial . . . proceeding against the [bankruptcy] debtor . . . ." 11 U.S.C. § 362(a)(1). The automatic stay provided by 11 U.S.C. § 362 is applicable to judicial proceedings at both the trial and appellate levels. Shah v. Glendale Fed. Bank, 52 Cal. Rptr.2d 417, 420 (Cal. Ct. App. 1996). Although all claims against the debtor are stayed, the stay does not apply to claims initiated by the debtor, whose "successful prosecution would inure to the benefit of the bankruptcy estate." Parker v. Bain, 68 F.3d 1131, 1138 (9th Cir. 1995) (internal quotation marks omitted). Moreover,
>
> > Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.
>
> Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1203-06 (3d Cir. 1991). "[W]hether an action is 'against the debtor' within the meaning of section 362(a)(1) is determined by the debtor's status at the inception of the action; regardless whether the debtor is the appellant or the respondent." Shah, 52 Cal. Rptr.2d at 420.
>
> In Chang v. Buffington, 125 Hawai'i 186, 192, 256 P.3d 694, 700 (2011), the Hawai'i Supreme Court stated: "It is well established that the automatic stay is limited to proceedings against debtors and does not apply to non-bankrupt codefendants." The supreme court held in Chang that the stay was limited to proceedings against the debtor and did not apply to "the other non-bankrupt parties." Chang, 125 Hawai'i at 192, 236 P.3d at 700.

In the Order, we ruled that: (1) the portions of this appeal which arise from the First Amended Complaint brought by Kona's Best against Mountain Thunder and Naturescape are stayed,

4

but the portions of the appeal which arise from Kona's Best's First Amended Complaint against the Batemans are not stayed; (2) the portions of the appeal which arise from the First Amended Counterclaim brought by the Mountain Thunder Defendants against Kona's Best and the First Amended Third-Party Complaint brought by the Mountain Thunder Defendants against Roberts and Hight are not stayed; and (3) and Robert's and Hight's appeal which seeks to overturn the Circuit Court's denial of their request for attorney's fees and costs against the Mountain Thunder Defendants is stayed.[3/]

Pursuant to the Order, we will decide in this Memorandum Opinion: (1) Kona's Best's appeal, which seeks to overturn the judgment entered in favor of the Mountain Thunder Defendants on the Mountain Thunder Defendants' claims for (a) tortious interference with prospective business advantage and (b) breach of contract that were raised in the First Amended Counterclaim; (2) the portions of the Mountain Thunder Defendants' cross-appeal that seek to overturn the judgment entered in favor of Kona's Best on claims raised in the Mountain Thunder Defendants' First Amended Counterclaim and the judgment entered in favor of Roberts and Hight on claims raised in the First Amended Third-Party Complaint; and (3) the portions of the cross-appeal by the Batemans that seek to overturn the judgment entered in favor of Kona's Best and against the Batemans on claims raised in Kona's Best's First Amended Complaint and the award of attorney's fees in favor of Kona's Best and against the Batemans. We will not decide: (1) Roberts' and Hight's appeal, which challenges the Circuit Court's denial of their request for attorney's fees and costs against the Mountain Thunder Defendants; (2) Naturescape's cross-appeal, which seeks to

---

[3/] Since the filing of the Order, Trustee Kane has not moved to intervene or substitute as a party in this appeal. In addition, we have not received notice of any action taken in the Bankruptcy Court to enlarge or reduce the scope of the stay applicable to this appeal as set forth in our Order.

overturn the judgment entered in favor of Kona's Best and against Naturescape on Kona's Best's First Amended Complaint; and (3) the portions of the cross-appeal by Mountain Thunder that seek to overturn the judgment entered in favor of Kona's Best and against Mountain Thunder on claims raised in Kona's Best's First Amended Complaint and the award of attorney's fees in favor of Kona's Best and against Mountain Thunder.

III.

As explained in greater detail below, with respect to Kona's Best's appeal, we conclude that: (1) the Circuit Court erred in denying Kona's Best's motion for judgment as a matter of law on the Mountain Thunder Defendants' claim for tortious interference with prospective business advantage; and (2) the Circuit Court did not err in denying Kona's Best motion for judgment as a matter of law on the Mountain Thunder Defendants' claims for breach of contract. With respect to the Mountain Thunder Defendants' cross-appeal, we affirm the Circuit Court on all claims of error challenging: (1) the entry of judgment in favor of Kona's Best on claims raised in the Mountain Thunder Defendants' First Amended Counterclaim; (2) the entry of judgment in favor of Roberts and Hight on claims raised in the First Amended Third-Party Complaint; (3) the entry of judgment in favor of Kona's Best and against the Batemans on claims raised in Kona's Best's First Amended Complaint; and (4) the award of attorney's fees in favor of Kona's Best and against the Batemans.

BACKGROUND

This case involves Kona's Best, which was a relative newcomer to the Kona coffee industry, and Mountain Thunder, which was an established Kona coffee business.

I.

The Kona coffee season starts in July or August and ends in February or March of the following year. Coffee is grown on numerous farms across the Kona coast on Island of Hawaiʻi. During the coffee season, coffee beans are harvested, processed, and roasted for consumption.

6

The process of coffee production occurs in several stages. First, the fruit of the coffee plant, also known as the coffee cherry, is picked. This coffee cherry is then wet-milled to remove the pulp from the coffee bean, and the beans are dried. At this point, the coffee is referred to as "parchment" because of the paper-like husk on the outside of the bean. The parchment coffee is then dry-milled to remove the husk, and after the dry-milling, the coffee is known as green coffee or green beans. The final step in the process is the roasting of the coffee. Some coffee producers sell the green beans to processors who roast and distribute the coffee, while others roast and distribute the coffee beans themselves.

II.

At the time relevant to this case, Mountain Thunder was a family owned and operated business. Lisa and Trent Bateman, who were the sole officers and shareholders of Mountain Thunder, began doing business in the Kona coffee industry in the late 1990's and gradually built the business over the years. The Batemans' children also assisted in the operation of Mountain Thunder.

Although Mountain Thunder grew, processed, and roasted some of its own coffee, its primary business between 2002 and 2007 consisted of purchasing and processing coffee cherry to green coffee for Hawaii Coffee Company (Hawaii Coffee). Under this arrangement, Hawaii Coffee would advance Mountain Thunder funds to purchase coffee cherry and then pay Mountain Thunder a fee to process it to green coffee. By 2007, Mountain Thunder had become interested in expanding its operations so that it could roast and sell more of its own coffee, but this required obtaining additional financing to purchase coffee cherry and acquire equipment to increase its capacity.

Roberts had an ownership interest in a real estate investment company called Sandstone Ventures, LLC (Sandstone), and Hight was a project manager for Sandstone. In 2006, Roberts, through Sandstone, purchased a residence and coffee farm near

Mountain Thunder's facilities in Kaloko, Hawai'i. At that time, neither Roberts nor Hight had experience in the coffee business. Roberts, however, was interested in having Sandstone become involved in the Kona coffee industry, and on or about September 27, 2006, Roberts registered "Kona's Best Natural Coffee LLC" as a Hawai'i domestic limited liability company whose stated purpose was harvesting, roasting, and marketing coffee.

III.

In the fall of 2006, Roberts' property manager hired Mountain Thunder to pick the coffee cherry on Roberts' farm. This arrangement eventually resulted in Roberts and Hight becoming acquainted with the Batemans. In March 2007, the Batemans entered into preliminary discussions with Roberts and Hight about possible financing for the expansion of Mountain Thunder's operations. On March 12, 2007, Trent sent an email to Hight, which was forwarded to Roberts, in which Trent expressed his desire to obtain new financing to replace the $2 million Mountain Thunder had been receiving pursuant to its arrangement with Hawaii Coffee, so that Mountain Thunder could roast more coffee for itself and dramatically expand its roasted coffee sales. Roberts responded that he was interested in getting together to meet and see if they "could put something together that would be beneficial to both parties."

In March 2007, the Batemans, Roberts, Hight, and Jim Smittkamp (Smittkamp), Roberts' attorney, met on the grounds of the Mountain Thunder coffee plantation. The parties discussed Mountain Thunder's business, its plans and hopes for the future, and possible means for Sandstone to assist with these plans.

The parties dispute whether a confidentiality agreement was signed before these discussions. According to the Batemans, a confidentiality agreement was signed at the March 2007 meeting before the Batemans disclosed any information regarding their operations and future business plans. At trial, the Batemans introduced a copy of an unsigned and undated confidentiality agreement, which they testified was the same as the agreement

Trent and Roberts had signed before the Batemans' disclosure of their operations and future plans. This confidentiality agreement provided, in relevant part:

> In consideration of the Disclosing Party's disclosure to it of the Information, the Interested Party agrees that it will keep the Information confidential and that, without the prior written consent of the Disclosing Party, the Information will not be disclosed by the Interested Party or by its officers, directors, partners, employees, affiliates, agents or representatives (collectively, "Representatives"), and will not be used by the Interested Party or its Representatives other than in connection with the Transaction.

The "Information" covered by the confidentiality agreement was information that was "non-public, confidential or proprietary in nature" and did not include information that "is or becomes" available publicly or through third-party sources. The confidentiality agreement also provided that "[t]he rights and obligations of the parties hereunder shall terminate one (1) year from the date hereof."

The Kona's Best Appellants deny that this confidentiality agreement was ever signed. Roberts testified that he believed a confidentiality agreement prepared by Smittkamp was offered to Trent at the March 2007 meeting, but that the agreement "[n]ever got signed." Hight stated that he did not recall a confidentiality document being signed at the time of the March 2007 meeting.

At the March 2007 meeting, Hight and Roberts requested that the Batemans provide Mountain Thunder's financial information and to create a "wish list" of things Mountain Thunder needed to realize its goals. The Batemans provided their wish list on April 9, 2007, which included $1 million to buy coffee and additional amounts to purchase equipment and expand their facilities. The Batemans also discussed the possibility of increasing Mountain Thunder's supply of coffee by merging with Koa Coffee Plantation (Koa Coffee), which was owned by Marin Artukovich (Artukovich). Koa Coffee was a competitor of Mountain Thunder, with both having similar operations, but the Batemans

9

had a friendly relationship with Artukovich, and they had helped each other in the past.

After the March 2007 meeting, the parties continued to discuss a potential deal. At trial, the Batemans testified that Roberts stated during their early discussions that he wanted to "make [the Batemans'] dreams come true." Over time, the parties' discussions shifted from Sandstone providing financing to Mountain Thunder, to Sandstone investing in Mountain Thunder, and then to Sandstone acquiring Mountain Thunder's assets through Kona's Best.[4]

In April 2007, Trent provided Hight with contact information for Artukovich. Roberts invited the Batemans to Denver, Sandstone's headquarters, to continue their discussions. In early May 2007, the Batemans met with Roberts, Hight, and other Sandstone advisors in Colorado. The Batemans also provided James Hackstaff, an attorney for Sandstone, with a statement detailing Mountain Thunder's business and the Batemans' experience in the Kona coffee market, which was recorded by a court reporter. At the Colorado meetings, Sandstone agreed to loan Mountain Thunder and the Batemans $100,000 for working capital, which was reflected in a promissory note signed by the Batemans.[5] Sandstone also authorized Hight to purchase up to $500,000.00 worth of coffee equipment for use by Mountain Thunder.

After the Colorado meetings, the Batemans and Hight attended the Specialty Coffee Association of America conference in California. At the conference, Hight purchased several pieces of equipment which could be used to expand Mountain Thunder's operations. During the conference, Hight and Trent met with Artukovich, the owner of Koa Coffee, and they discussed the

---

[4] Sandstone held a 47% ownership interest in Kona's Best.

[5] After making the first payment under the promissory note, Mountain Thunder and the Batemans defaulted on the note and made no further payments. Sandstone assigned the promissory note to Kona's Best.

possible purchase by Sandstone of both Mountain Thunder and Koa Coffee. Artukovich was looking to sell Koa Coffee, and he wanted the sale to be completed quickly, because he was planning to purchase a winery in California.

IV.

At some point, Sandstone apparently decided to use Kona's Best as its corporate vehicle for entering the Kona coffee market.[6] In May 2007, while the discussions concerning the purchase by Kona's Best of Mountain Thunder's assets were ongoing, Kona's Best began funding Mountain Thunder's purchase of coffee cherry. Kona's Best agreed to provide funds for the actual cost of the coffee cherry and to pay Mountain Thunder a fee for processing the coffee cherry. Because coffee cherry purchases were now being funded by Kona's Best, Mountain Thunder ceased its prior relationship with Hawaii Coffee. According to Jim Wayman (Wayman), the President of Hawaii Coffee, Mountain Thunder did not inform Hawaii Coffee that it had stopped purchasing cherry coffee on Hawaii Coffee's behalf, and Wayman only learned of this development when he called Trent during the 2007-2008 coffee season to ask why Mountain Thunder had not submitted any invoices for coffee cherry purchases.

On June 14, 2007, in furtherance of their negotiations, Kona's Best issued a letter of intent (June LOI) notifying Mountain Thunder of its intent to purchase Mountain Thunder's assets. The June LOI was non-binding in that it did not obligate either side to enter into an asset purchase agreement. The June LOI also provided that upon execution of the June LOI, Kona's Best would have access to Mountain Thuder's business records. It also contained a confidentiality provision, which stated, in relevant part:

> 5. **Use and Confidentiality**. All of the information, records, books and data to which Purchaser and/or its representatives are given access as set forth above will be used by Purchaser solely for the purpose of analyzing the

[6] For simplicity, our references hereinafter to "Kona's Best" will include actions taken by Sandstone, unless otherwise indicated.

11

> Business and the Assets and will be treated on a
> confidential basis.

Trent made changes to the June LOI, such as increasing the purchase price from $3 million to $3.5 million. Kona's Best did not acknowledge acceptance of these changes. The June LOI also provided that its provisions would be null and void if it was not accepted by the Batemans on or before June 22, 2007. Trent testified that he signed the June LOI by this deadline, but he did not date the June LOI, and it was not returned to Kona's Best until July 12, 2007.

On July 27, 2007, Kona's Best entered into an agreement to purchase the assets of Koa Coffee, and the asset purchase closed on August 20, 2007.[1] As part of this asset purchase agreement, Artukovich agreed to remain as a consultant for Kona's Best and to train Hight, who assumed the role of general manager for Kona's Best, in the operation of the business.

On August 28, 2007, Kona's Best issued another letter of intent (August LOI) regarding its intent to purchase the assets of Mountain Thunder. The August LOI contained provisions similar to the June LOI, including the same confidentiality provision, but reduced the purchase price to $2.495 million and had an acceptance deadline of August 31, 2008. The Batemans timely signed and accepted the August LOI.

V.

Kona's Best and Mountain Thunder were unable to reach a final agreement and never executed an asset purchase agreement. The potential deal fell apart and negotiations broke down toward the end of November 2007.

The termination of negotiations left several outstanding issues between the parties. The $100,000 promissory note executed by the Batemans had not been paid. Equipment

---

[1] Kona's Best began operating Koa Coffee after the asset purchase and did much of its business under this name. For the sake of simplicity, we will refer to both Kona's Best and Koa Coffee as "Kona's Best," except where discussing Koa Coffee specifically.

purchased by Kona's Best in contemplation of its purchase of Mountain Thunder's assets had been installed at the Mountain Thunder facilities and was being used by Mountain Thunder. Kona's Best requested that Mountain Thunder return all of the coffee Mountain Thunder had purchased on behalf of Kona's Best, including parchment coffee which Mountain Thunder had not yet dry-milled into green coffee. Disputes arose in reconciling which coffee in Mountain Thunder's possession belonged to Kona's Best and which belonged to Mountain Thunder and in determining how much Kona's Best owed to Mountain Thunder for the services provided by Mountain Thunder.

VI.

After losing Kona's Best's business, Trent contacted Wayman of Hawaii Coffee about re-establishing their prior purchase and processing agreement. Wayman agreed to reinstate their agreement until the end of the 2007-2008 season, as Mountain Thunder's earlier, unexpected termination of their agreement had left Hawaii Coffee with a supply shortfall.

After the end of the 2007-2008 season, Trent again contacted Wayman seeking to continue Mountain Thunder's purchase and processing agreement with Hawaii Coffee for the 2008-2009 season. By this time, Kona's Best had filed the lawsuit in this case against the Mountain Thunder Defendants. Wayman was hesitant to continue his relationship with the Mountain Thunder Defendants because of their actions during the prior season when they stopped purchasing and processing coffee for Hawaii Coffee in favor of Kona's Best with very little notice. Wayman was also reluctant because of the pending lawsuit, fearing that he may not be able to recover the funds advanced to Mountain Thunder and that the coffee purchased by Mountain Thunder on Hawaii Coffee's behalf may become entangled in the litigation. The Batemans attempted to assuage Wayman's concerns by informing him that Mountain Thunder's assets were protected because the assets had been transferred to an offshore entity and were thus beyond the

13

reach of any judgment entered against Mountain Thunder in the lawsuit.

Kona's Best, with Artukovich's assistance, also entered into negotiations with Wayman to purchase and process coffee for Hawaii Coffee during this time. Artukovich testified that he was instructed by Roberts to tell Wayman that Kona's Best would not sign an agreement if Hawaii Coffee continued to do business with Mountain Thunder. Wayman, however, testified that Artukovich simply cautioned him that "if you're going to do business with Trent, I'd just watch my back."

Wayman did not view Artukovich's comments as meaning that Hawaii Coffee's agreement with Kona's Best was conditioned on Hawaii Coffee not doing business with Mountain Thunder. The written agreement between Kona's Best and Mountain Thunder that was signed in July 2008 was non-exclusive and did not include a condition preventing Hawaii Coffee from doing business with Mountain Thunder. Wayman testified that he decided not to do business with Mountain Thunder, not because of any condition imposed by Kona's Best, but because of his concerns (1) about Mountain Thunder's reliability in light of its abrupt termination of their agreement during the prior season; (2) that the pending litigation and a possible judgment against Mountain Thunder could tie up coffee that Mountain Thunder purchased on Hawaii Coffee's behalf; and (3) that Mountain Thunder's movement of its assets offshore would make it difficult for Hawaii Coffee to collect from Mountain Thunder.

PROCEDURAL HISTORY

I.

On April 7, 2008, Kona's Best filed a Complaint against the Mountain Thunder Defendants. The Mountain Thunder Defendants filed a Counterclaim against Kona's Best and a Third-Party Complaint against Roberts and Hight.

On July 1, 2008, several months after the filing of Kona's Best's Complaint, the Batemans transferred substantially all of Mountain Thunder's assets to Naturescape. The Batemans'

14

daughter, Brooke, was the sole officer and director of Naturescape and its ownership structure involved Cook Islands entities. The stated purchase price for the asset transfer was $200,000, with Naturescape leasing back the assets to Mountain Thunder for $1,000 per month. Mountain Thunder continued to use the assets in its business operations. Authorization for the transfer of assets was not reflected in the corporate minutes of either Mountain Thunder or Naturescape, and the sale and leaseback arrangement was not well documented.

In October 2008, several months after the transfer of assets to Naturescape, the Batemans denied in answers to Kona's Best's interrogatories that they had any knowledge or information regarding their "involvement with" Naturescape. Mountain Thunder, in its October 2008 answers to Kona's Best's interrogatories, denied any knowledge or information regarding the transfer or payment by Mountain Thunder of funds to Naturescape. In a February 2010 deposition, Lisa denied having knowledge of details concerning Emerald Island Trust, an entity in the chain of ownership of Naturescape, such as who set up the trust, what the trust does, and who the current trustees are. However, in a subsequent March 6, 2010, deposition, Lisa testified that she was familiar with Naturescape and its ownership structure; that Naturescape was her daughter's company; and that Mountain Thunder had sold its equipment to Naturescape in "mid 2008" for $200,000 and then entered into a "verbal lease" with Naturescape to lease back the equipment for $1,000 per month.

## II.

After learning of the connection between the Mountain Thunder Defendants and Naturescape, Kona's Best, on March 29, 2010, filed a Motion to Amend Complaint and to Continue Trial. The Circuit Court granted the motion, concluding that the Mountain Thunder Defendants "obfuscated [Kona's Best's] ability to discern their relationship with Naturescape[.]"

15

In April 2010, Kona's Best filed its First Amended Complaint, which added a count for fraudulent transfer of assets by Mountain Thunder and brought Naturescape into the litigation.[2/] The First Amended Complaint alleged the following causes of action:

(1) **COUNT I Breach of Contract** -- alleging that the Mountain Thunder Defendants breached their contract with Kona's Best relating to the purchase and processing of coffee cherry on behalf of Kona's Best by failing to deliver all the coffee purchased to Kona's Best;

(2) **COUNT II Conversion** -- alleging that the Mountain Thunder Defendants converted some of Kona's Best's coffee by placing some of the coffee they purchased on Kona's Best's behalf into the Mountain Thunder Defendants' own roasting program;

(3) **COUNT III Breach of Note** -- alleging that the Mountain Thunder Defendants breached the $100,000 promissory note in favor of Sandstone, which was endorsed to Kona's Best, by failing to make payments due on the note;

(4) **COUNT IV Conversion** -- alleging that the Mountain Thunder Defendants converted the equipment and machinery purchased by Kona's Best and delivered to Mountain Thunder by refusing to relinquish possession to Kona's Best after Kona's Best demanded possession of the equipment and machinery in December 2007;

(5) **COUNT V Loss of Use Damages** -- alleging that Kona's Best suffered damages as a direct result of the Mountain Thunder Defendants' refusal to turn over possession of the equipment and machinery purchased by Kona's Best;

(6) **COUNT VI Intentional/Negligent Misrepresentation** -- alleging that the Mountain Thunder Defendants misrepresented to Kona's Best that they were licensed by the State of Hawai'i as brokers of Kona coffee and that Kona's Best reasonably relied upon this misrepresentation to its detriment;

---

[2/] Except for the new fraudulent transfer count against Naturescape, the First Amended Complaint contained the same causes of action as the original Complaint.

(7) **COUNT VII Breach of Fiduciary Duty** -- alleging that the Mountain Thunder Defendants owed Kona's Best fiduciary duties as Kona's Best's "broker" and that the Mountain Thunder Defendants breached those duties by failing to make payment to Kona's Best of money they collected for the sale of Kona's Best's coffee;

(8) **COUNT VIII Breach of Contract** -- alleging that the Mountain Thunder Defendants agreed to sell Kona's Best's coffee to third parties on Kona's Best's behalf but breached this agreement by selling the coffee and collecting payment on the sales, but failing to make payment to Kona's Best for said coffee;

(9) **COUNT IX Conversion of Funds** -- alleging that the Mountain Thunder Defendants converted funds belonging to Kona's Best by failing to make payment to Kona's Best for Kona's Best's coffee they sold to third parties;

(10) **COUNT X Immediate Possession of Personal Property** -- alleging that Kona's Best is entitled to immediate possession of equipment, machinery, coffee inventory, and funds owned by Kona's Best that are still in the possession of the Mountain Thunder Defendants;

(11) **COUNT XI Breach of Duty** -- alleging that the Mountain Thunder Defendants breached their duty to deal fairly and in good faith with Kona's Best;

(12) **COUNT XII Alter Ego** -- alleging that Mountain Thunder is the alter ego of the Batemans; and

(13) **COUNT XIII Fraudulent Transfer** -- alleging that during the pendency of this action, Mountain Thunder fraudulently transferred "the majority and/or substantially all of its assets to Naturescape."

The Mountain Thunder Defendants filed a First Amended Counterclaim against Kona's Best and a First Amended Third-Party Complaint against Roberts and Hight, which essentially alleged the same causes of action against all of the Kona's Best Appellants. The First Amended Counterclaim and First Amended Third-Party Complaint alleged the following causes of action:

(1) **COUNT I Breach of Contract -- Nonpayment for Coffee Beans and Coffee Services** -- alleging that Kona's Best, Roberts, and Hight breached and owe outstanding amounts on their contract with the Mountain Thunder Defendants for the purchase and sale of coffee beans and coffee related services;

(2) **Count II Promissory Estoppel -- Nonpayment for Coffee Beans and Coffee Services** -- alleging that Kona's Best, Roberts, and Hight should be estopped from denying their promise to pay the Mountain Thunder Defendants for coffee beans and coffee related services, which the Mountain Thunder Defendants relied upon to their detriment;

(3) **COUNT III Breach of Contract -- Termination of Purchase** -- alleging that Kona's Best, Roberts, and Hight breached their promises and agreement to purchase Mountain Thunder's assets;

(4) **COUNT IV Breach of Duty to Negotiate in Good Faith** -- alleging that Kona's Best, Roberts, and Hight breached their duty to negotiate in good faith with respect to the purchase of Mountain Thunder's assets;

(5) **COUNT V Promissory Estoppel-- Financing** -- alleging that Kona's Best, Roberts, and Hight should be estopped from denying promises to financially invest in Mountain Thunder and to help Mountain Thunder expand and grow its roasting program, which the Mountain Thunder Defendants relied upon to their detriment;

(6) **COUNT VI Breach of Contract -- Confidentiality** -- alleging that Kona's Best, Roberts, and Hight breached the terms of the confidentiality provision set forth in the June LOI and August LOI and used confidential information and trade secrets disclosed by the Mountain Thunder Defendants;

(7) **COUNT VII Trade Secret Violation** -- alleging that Kona's Best, Roberts, and Hight misappropriated the Mountain Thunder Defendants' trade secrets, including the customer list, coffee bean roasting methods, and other proprietary information;

(8) **COUNT VIII Tortious Interference of Contract** -- alleging that Kona's Best, Roberts, and Hight induced business customers and associates of

18

Mountain Thunder to breach their contracts with Mountain Thunder;

(9) **COUNT IX Tortious Interference of Prospective Contractual Relations** -- alleging that Kona's Best, Roberts, and Hight interfered with Mountain Thunder's prospective contractual agreements with vendors and buyers of coffee;

(10) **COUNT X Defamation** -- alleging that Kona's Best, Roberts, and Hight disparaged and made false defamatory statements about the Mountain Thunder Defendants;

(11) **COUNT XI Intentional Infliction of Emotional Distress** -- alleging that the actions of Kona's Best, Roberts, and Hight have caused the Batemans to suffer extreme emotional distress;

(12) **COUNT XII Unjust Enrichment** -- alleging that Kona's Best, Roberts, and Hight unjustly obtained the Mountain Thunder Defendants' business knowledge, trade secrets, and coffee;

(13) **COUNT XIII Fraud** -- alleging that Kona's Best, Roberts, and Hight fraudulently induced the Mountain Thunder Defendants to reveal their trade secrets and confidential business information and then wrongfully used such information to compete against Mountain Thunder;

(14) **COUNT XIV Misrepresentation** -- alleging that Kona's Best, Roberts, and Hight used misrepresentations to mislead the Mountain Thunder Defendants into revealing their trade secrets and confidential business information and then wrongfully used such information to compete against Mountain Thunder;

(15) **COUNT XV Unfair Competition** -- alleging that Kona's Best, Roberts, and Hight used unfair business practices to unfairly compete with the Mountain Thunder Defendants and other Kona coffee mills, in violation of Hawaii Revised Statutes (HRS) §§ 480-2, 480-13, 481-1, and 481-3;

(16) **COUNT XVI Attempt to Monopolize** -- alleging that Kona's Best, Roberts, and Hight attempted to monopolize the Kona coffee trade in violation of HRS § 480-9;

(17) **COUNT XVII Vicarious Liability -- Alter Ego** -- alleging that Kona's Best is the alter ego of Roberts and vice versa and that Roberts is vicariously liable for the actions of Kona's Best and Hight;

(18) **COUNT XVIII Injunctive Relief** -- alleging that the Mountain Thunder Defendants are entitled to injunctive relief to prevent future violations by Kona's Best, Roberts, and Hight with respect to confidential information obtained from the Mountain Thunder Defendants; and

(19) **COUNT XIX Liability on Kona's Best Complaint** -- alleging that the Mountain Thunder Defendants are not liable to Kona's Best on Counts III, IV, and V of Kona's Best's First Amended Complaint.[9]

III.

Prior to trial, the Circuit Court granted summary judgment in favor of the Kona's Best Appellants on the Mountain Thunder Defendants' claims in Counts XI and Count XVI of the First Amended Counterclaim and First Amended Third-Party Complaint. Kona's Best voluntarily dismissed Counts V, VII, X, and XI of the First Amended Complaint, and the Mountain Thunder Defendants voluntarily dismissed Count IV of the First Amended Counterclaim and First Amended Third-Party Complaint.

The case proceeded to trial on Counts I, II, III, IV, VI, VIII, and IX of the First Amended Complaint and Counts I, III, VI, VII, VIII, IX, X, XIII, XIV, XV of the First Amended Counterclaim and First Amended Third-Party Complaint. The equitable claims set forth in Kona's Best's First Amended Complaint, Counts XII and XIII, and the Mountain Thunder Defendants' First Amended Counterclaim and First Amended Third-Party Complaint, Counts II, V, XII, XVII, and XVIII, were reserved for determination by the Circuit Court after trial.

---

[9] Other than the finding of non-liability on Counts III, IV, and V of Kona's Best's First Amended Complaint, it is unclear what specific relief the Mountain Thunder Defendants were seeking under Count XIX.

After the parties presented their cases in chief, the Circuit Court granted judgment as a matter of law in favor of the Kona's Best Appellants on Counts VII (Trade Secret Violation) and Count X (Defamation) of the First Amended Counterclaim and First Amended Third-Party Complaint. By agreement of the parties, the following counts were grouped together for purposes of the special verdict form: (1) Counts I, III, and VIII of the First Amended Complaint (Kona's Best's Breach of Contract Claims); (2) Counts II, IV, and IX of the First Amended Complaint (Kona's Best's Conversion Claims); and (3) Counts I, III, and VI of the First Amended Counterclaim and First Amended Third-Party Complaint (Mountain Thunder Defendants' Breach of Contract Claims).

The jury returned the following special verdict. The jury found that the Mountain Thunder Defendants were liable to Kona's Best on Kona's Best's Breach of Contract Claims and Kona's Best's Conversion Claims. The jury awarded damages totaling $167,741.35 for Kona's Best's Breach of Contract Claims and $77,274.75 for Kona's Best's Conversion Claims. These damages were apportioned so that 50 percent was owed by Mountain Thunder and 25 percent was each owed by Trent and Lisa. The jury found that the Mountain Thunder Defendants were not liable on Count VI (Intentional/Negligent Misrepresentation).

With respect to the claims brought by the Mountain Thunder Defendants, the jury found that Kona's Best was liable on the Mountain Thunder Defendants' Breach of Contract Claims, their claim for tortious interference with prospective business advantage (Count IX),[10] and their claim for unfair competition (Count XV) under the First Amended Counterclaim. The jury awarded damages against Kona's Best in the amount of $154,000 for

_____

[10] Although Count IX is labeled "Tortious Interference of Prospective Contractual Relations" in the First Amended Counterclaim and the First Amended Third-Party Complaint, the claim asserted in Count IX was referred to at trial and is referred to by the parties on appeal as "tortious interference with prospective business advantage." The jury was also instructed on the elements for tortious interference with prospective business advantage. We will analyze and refer to the claim in Count IX as a claim for tortious interference with prospective business advantage.

the Mountain Thunder Defendants' Breach of Contract Claims, $198,347 for their claim for tortious interference with prospective business advantage, and $1 for their claim for unfair competition. The jury found that Kona's Best was not liable on Counts VIII (Tortious Interference with Contract), XIII (Fraud), and XIV (Misrepresentation) of the First Amended Counterclaim. The jury also found that Roberts and Hight were not liable under the First Amended Third-Party Complaint for any of the claims submitted to the jury.

The jury's special verdict is summarized as follows:[11]

| Claims (First Amended Complaint) | Mountain Thunder | Trent Bateman | Lisa Bateman |
|---|---|---|---|
| Breach of Contract (Counts I, III, and VIII) | $83,870.68 | $41,935.34 | $41,935.34 |
| Conversion (Counts II, IV, and IX) | $38,637.37 | $19,318.69 | $19,318.69 |
| Negligent Misrepresentation (Count VI) | Not liable | Not liable | Not liable |
| Fraud (Count VI) | Not liable | Not liable | Not liable |
| Claims (First Amended Counterclaim and First Amended Third-Party Complaint) | Kona's Best | Roberts | Hight |
| Breach of Contract (Counts I, III, and VI) | $154,000 | Not liable | Not liable |
| Negligent Misrepresentation (Count XIV) | Not liable | Not liable | Not liable |
| Tortious Interference with Contract (Count VIII) | Not liable | Not liable | Not liable |
| Tortious Interference with Prospective Business (Count IX) | $198,347 | Not liable | Not liable |
| Unfair Competition (Count XV) | $1 | Not liable | Not liable |
| Fraud (Count XIII) | Not liable | Not liable | Not liable |

---

[11] The special verdict apparently separated Kona's Best's claim in Count VI of the First Amended Complaint for Intentional/Negligent Misrepresentation into "Negligent Misrepresentation" and "Fraud."

Based on the evidence introduced at trial, the Circuit Court decided the equitable claims asserted by the parties and entered its "Findings of Fact, Conclusions of Law, and Order Regarding Equitable Claims on Counts II, V, XII, XVII and XVIII of the [First Amended] Counterclaim and [First Amended] Third Party Complaint; and Counts XII and XIII of the First Amended Complaint" (Order Regarding Equitable Claims). The Circuit Court granted judgment in favor of Kona's Best on its claims that Mountain Thunder is the alter ego of Trent and Lisa (Count XII) and that Mountain Thunder's transfer of its assets to Naturescape was a fraudulent conveyance (Count XIII). The Circuit Court also granted judgment in favor of Kona's Best, Roberts, and Hight and against the Mountain Thunder Defendants on all the equitable claims asserted in the First Amended Counterclaim and First Amended Third-Party Complaint.

IV.

After the jury's special verdict was entered, the parties filed motions challenging the jury's special verdict. The Circuit Court denied the Mountain Thunder Defendants' renewed motion for judgment as a matter of law with respect to Kona's Best's Conversion Claims, their request for remittitur regarding damages awarded against the Batemans on Kona's Best's Conversion Claims, and their request for additur with regard to the $1 awarded by the jury on their unfair competition claim. The Circuit Court granted a portion of Kona's Best's renewed motion for judgment as a matter of law, granting judgment in Kona's Best's favor on the Mountain Thunder Defendants' unfair competition claim and vacating the jury's $1 award on that claim. The Circuit Court denied Kona's Best's renewed motion for judgment as a matter of law on the Mountain Thunder Defendants' claim for tortious interference with prospective business advantage and the Mountain Thunder Defendants' Breach of Contract Claims, and the Circuit Court also denied Kona's Best's alternative request for a new trial on these claims.

23

The Mountain Thunder Defendants and the Kona's Best Appellants filed motions for attorney's fees and costs. The Circuit Court awarded Kona's Best $3,435.34 in attorney's fees, but denied Roberts and Hight an award of any attorney's fees. The Circuit Court entered its Amended Judgment on June 15, 2012, and this appeal followed.

DISCUSSION

I. Kona's Best's Appeal

We first address the points of error raised by Kona's Best in its appeal.[12/]

A.

Kona's Best contends that the Circuit Court erred in denying its renewed post-verdict motion for judgment as a matter of law on the Mountain Thunder Defendants' claim for tortious interference with prospective business advantage.

Courts apply the same standard in ruling on a renewed motion for judgment as a matter of law and a motion for judgment as a matter of law. See Board of Directors of Ass'n of Apartment Owners of Regency Tower Condominium Project v. Regency Tower Venture, 2 Haw. App. 506, 514, 635 P.2d 244, 250 (1981).

> A motion for judgment as a matter of law may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor.

Ray v. Kapiolani Medical Specialists, 125 Hawai'i 253, 261, 259 P.3d 569, 577 (2011) (internal quotation marks, citation, and brackets omitted). We review a trial court's decision on a motion for judgment as a matter of law de novo. Id.

---

[12/] As previously noted, in light of the involuntary bankruptcy petition filed against Mountain Thunder, Roberts' and Hight's appeal, which challenges the Circuit Court's denial of their request for attorney's fees and costs against the Mountain Thunder Defendants, is stayed, and we will not decide Roberts' and Hight's claim on appeal that the Circuit Court erred in denying their request for attorney's fees and costs.

Kona's Best argues that the Circuit Court erred in denying its motion for judgment as a matter of law on the Mountain Thunder Defendants' claim for tortious interference with prospective business advantage because: (1) Kona's Best was protected by the "competitor's privilege,"[13] and (2) the Mountain Thunder Defendants failed to prove causation and damages. We conclude that the Circuit Court erred in denying Kona's Best's motion for judgment as a matter of law on this claim.

1.

To establish a claim for tortious interference with prospective business advantage against Kona's Best, the Mountain Thunder Defendants were required to prove the following elements:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the [Mountain Thunder Defendants]; (2) knowledge of the relationship, advantage, or expectancy by [Kona's Best]; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stiffel, 113 Hawaiʻi 251, 267 n.18, 151 P.3d 732, 748 n.18 (2007) (block quote format altered and citation omitted).

Kona's Best argues that its conduct was protected by the competitor's privilege. In discussing the closely related

---

[13] We note that Kona's Best argued the competitor's privilege in its renewed post-verdict motion for judgment as a matter of law, but not in its original motion for judgment as a matter of law. Although, "generally, a renewed motion for judgment as a matter of law cannot assert a ground that was not included in the original motion[,]" Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 117, 176 P.3d 91, 116 (2008), this restriction is subject to waiver if the non-moving party fails to object to the renewed motion on this basis in the trial court. Wallace v. McGlothan, 606 F.3d 410, 419 (7th Cir. 2010); Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc., 295 F.3d 1065, 1076 n.3 (10th Cir. 2002) (citing cases); Davis v. Davis, 405 Fed. Appx. 279, 283 (10th Cir. 2010). In the Circuit Court, the Mountain Thunder Defendants did not raise an objection to Kona's Best's renewed post-verdict motion based on Kona's Best's failure to argue the competitor's privilege in its original motion. We conclude that the Mountain Thunder Defendants have waived this objection by failing to raise it in the Circuit Court. Id.

tort of intentional interference with prospective contractual relations, this court recognized the privileges set forth in sections 768 through 773 of the Restatement (Second) of Torts, which includes the competitor's privilege. Kutcher v. Zimmerman, 87 Hawai'i 394, 408, 957 P.2d 1076, 1090 (App. 1998) ("We believe that the 'privileges' set forth in sections 768 through 773 of the Restatement (Second) of Torts are a suitable starting point to guide defendants as to what defenses they may assert against the tort. Thus, in our view, sections 768 through 773 can be raised as matters of defense to the tort in a way similar to that originally conceived under the first Restatement of Torts.")

The competitor's privilege is derived from the Restatement (Second) of Torts (Restatement) § 768 (1979), which provides, in relevant part, as follows:

> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> > (a) the relation concerns a matter involved in the competition between the actor and the other and
> >
> > (b) the actor does not employ wrongful means and
> >
> > (c) his action does not create or continue an unlawful restraint of trade and
> >
> > (d) his purpose is at least in part to advance his interest in competing with the other.

(Emphasis added.)

The competitor's privilege balances the need for competition in a free market against the need to protect a business against wrongful interference and is consistent with the purpose of the tort of interference with prospective business advantage. As noted by the Hawai'i Supreme Court:

> The primary objective of the tort of interference with prospective business advantage or opportunity is the protection of legitimate and identifiable business expectancies. Weighing against social and individual interests in protection of business expectancies and efforts to acquire property are the interests in legitimate business competition. That is, much of the common law is premised on

26

> the theory that competitors should have an opportunity to compete for business until such time as it is cemented by contract or agreement. Public and individual interests in free competition become particularly acute where a [litigant] anticipates, but is not yet assured, that a contractual or firm business relationship will materialize. Where the [litigant's] contractual relations are merely contemplated or potential, the public interest is best served by allowing any competitor the opportunity to divert those prospects to itself, so long as the means used are not themselves improper. Any contrary rule may tend to establish and perpetuate trade monopolies.

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 258, 982 P.2d 853, 887 (1999) (block quote format altered, citation and ellipsis points omitted; some emphasis added).

### 2.

The Mountain Thunder Defendants argue that Kona's Best was not protected by the competitor's privilege because it "acted in bad faith in obtaining Hawaii Coffee Company as its client." They assert that Kona's Best only learned of Hawai'i Coffee from the Batemans after entering into confidentiality agreements with the Batemans; that Kona's Best used the information provided by the Batemans; that Kona's Best directed Artukovich to tell Wayman that Kona's Best would not agree to purchase and process coffee for Hawaii Coffee if Hawaii Coffee did business with Mountain Thunder; and that Hawaii Coffee ceased doing business with Mountain Thunder after entering into a purchase and processing agreement with Kona's Best.

We conclude that Kona's Best was protected by the competitor's privilege in that Kona's Best's alleged actions in interfering with Mountain Thunder's prospective business advantage with Hawaii Coffee did not constitute improper interference through the employment of wrongful means. The Mountain Thunder Defendants' most significant claim is that Kona's Best induced Hawaii Coffee to stop doing business with Mountain Thunder by making this a condition of Kona's Best's agreement to purchase and process coffee for Hawaii Coffee. However, under the competitor's privilege, "[the actor] may

27

refuse to deal with the third persons in the business in which he competes with the competitor if they deal with the competitor." Restatement § 768 at ctm. e. Such action, by itself, does not constitute improper interference. See id; Restatement § 767 cmt. c. (concluding that a business may justifiably induce another not to deal with a competitor by non-predatory means).[14]

We also reject the Mountain Thunder Defendants' contention that Kona's Best employed improper means because it only learned of Hawaii Coffee and obtained other information through breaches of its confidentiality agreements with the Batemans. We note that the initial confidentiality agreement which the Batemans' allege that Trent signed at a March 2007 meeting only protected information provided by the Batemans that was "non-public, confidential or proprietary in nature," and the parties' obligations under the agreement terminated in one year. Hawaii Coffee was one of the largest buyers and sellers of Kona coffee in Hawai'i. Thus, information about Hawaii Coffee's existence and its position in the Hawai'i market was public information. Moreover, Kona's Best did not enter into its agreement with Hawaii Coffee to purchase and process coffee until July 23, 2008, which was more than a year after the alleged March 2007 confidentiality agreement, and Kona's Best was aware of Hawaii Coffee and details concerning its relationship with Mountain Thunder before the June LOI and the August LOI were signed. Accordingly, Kona's Best's agreement with Hawaii Coffee

---

[14] As explained in A-Mark Coin Co. v. General Mills, Inc., 195 Cal. Rptr. 859 (1983):

"In short, it is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability."

A-Mark Coin Co., 195 Cal. Rptr. at 867 (emphasis added) (quoting Prosser, The Law of Torts § 130 (4th ed. 1971).

was not the product of breaches of any confidentiality agreements with the Batemans.

We also conclude that there was insufficient evidence to show that the alleged interference by Kona's Best caused the termination of Mountain Thunder's prospective business relationship with Hawaii Coffee. Indeed, Wayman, the President of Hawaii Coffee, testified that he was not asked by Kona's Best to refrain from doing business with Mountain Thunder. Instead, Wayman testified that he was cautioned by Artukovich to "watch his back" if he was going to do business with Trent, which Wayman viewed as a warning regarding Trent's trustworthiness and not as a refusal by Kona's Best to contract with Hawaii Coffee if Hawaii Coffee did business with Mountain Thunder. Wayman testified that his decision not to do business with Mountain Thunder had nothing to do with any inducement by Kona's Best, but rather was based on his concerns about Mountain Thunder's reliability, in light of its unilateral termination, without warning, of their coffee purchasing and processing arrangement during the 2007-2008 coffee season; the pending litigation against Mountain Thunder, which created risks that coffee purchased by Mountain Thunder on Hawaii Coffee's behalf could be rendered unavailable; and questions about Mountain Thunder's solvency and the collectability of amounts owned by Mountain Thunder as a result of its movement of its assets offshore. Moreover, given their relative positions in the market, it seems doubtful that Kona's Best had the economic power to impose exclusivity conditions on Hawaii Coffee. We conclude that the Mountain Thunder Defendants failed to show that any alleged improper interference by Kona's Best caused the termination of Mountain Thunder's relationship with Hawaii Coffee and consequential damages.[15]

---

[15] We note that Thomas Loudat, the expert called by the Mountain Thunder Defendants on the damages Mountain Thunder sustained as a result of the Kona's Best Appellants' alleged tortious interference, testified that he was not asked to determine a causal link between the alleged actions of the Kona's Best Appellants and the damages he computed.

B.

Kona's Best contends that the Circuit Court erred in denying its motion for judgment as a matter of law on the Mountain Thunder Defendants' Breach of Contract Claims. We disagree.

The Mountain Thunder Defendants presented evidence that while the negotiations for Kona's Best to purchase Mountain Thunder's assets were ongoing, the parties entered into an oral agreement to have Mountain Thunder purchase coffee and process it to green coffee for Kona's Best. According to the Batemans, when negotiations broke down, Kona's Best demanded that Mountain Thunder immediately return all the coffee it had purchased for Kona's Best. The Batemans presented evidence that Kona's Best owed Mountain Thunder money for agreed upon services. The Batemans testified that included in the amounts owed was an administrative fee of $.50 per pound on the 308,000 pounds of coffee that Mountain Thunder delivered to Kona's Best. They also testified that in the confusion resulting from Kona's Best's demand that Mountain Thunder immediately return all the coffee it had purchased for Kona's Best, Mountain Thunder over-shipped to Kona's Best approximately 52,000 pounds of coffee that Mountain Thunder had obtained independent of Kona's Best, and that Kona's Best owed Mountain Thunder about $468,000 for the over-shipped coffee. The jury awarded the Mountain Thunder Defendants $154,000 in damages on their Breach of Contract Claims against Kona's Best, strongly indicating that the jury based its damages award on the evidence regarding the administrative fee and not the over-shipped coffee.

Kona's Best argues that the jury's $154,000 damages award on the Mountain Thunder Defendants' Breach of Contract Claims should be vacated because the Mountain Thunder Defendants' over-shipment theory of damages was not alleged in the pleadings and had not been disclosed in discovery. However, it is apparent that the jury's damages award was not based on the over-shipment theory. We therefore conclude that any impropriety in presenting

30

the over-shipment theory at trial does not warrant overturning the jury's breach of contract damages award.

We are not persuaded by Kona's Best's contention that it was unfairly surprised by the Batemans' testimony regarding the administrative fee. The Mountain Thunder Defendants' First Amended Counterclaim sought damages for breach of contract that included amounts owed by Kona's Best for Mountain Thunder's services; the Mountain Thunder Defendants introduced invoices at trial reflecting the $.50 administrative fee; and Kona's Best did not object to the Batemans' testimony regarding the administrative fee at trial or the Mountain Thunder Defendants' closing argument seeking recovery of the administrative fee as part of their damages. We conclude that Kona's Best's claim of unfair surprise regarding the administrative fee is without merit.

We also reject Kona's Best's claim that the jury's breach of contract award was illegal and void under HRS 145-2 (2011) because Mountain Thunder did not have a commissioned merchant license. Mountain Thunder had licences to act as a dealer and a processor under HRS 145-2, but not as a commissioned merchant. The Mountain Thunder Defendants presented evidence that Kona's Best owed them money for agreed upon services to purchase and process coffee, and that the amounts owed included an administrative fee. We conclude that Kona's Best has not shown that HRS § 145-2 precluded or rendered void the jury's breach of contract damages award in this case.

II.  The Mountain Thunder Defendants' Cross-Appeal

The Mountain Thunder Defendants raise numerous points of error in their cross-appeal. As explained below, we affirm the Circuit Court on all claims of error challenging: (1) the entry of judgment in favor of Kona's Best on claims raised in the Mountain Thunder Defendants' First Amended Counterclaim; (2) the entry of judgment in favor of Roberts and Hight on claims raised in the First Amended Third-Party Complaint; (3) the entry of judgment in favor of Kona's Best and against the Batemans on

claims raised in Kona's Best's First Amended Complaint; and (4) the award of attorney's fees in favor of Kona's Best and against the Batemans.[16/]

### A.   Unfair Competition Claim

The Mountain Thunder Defendants alleged unfair competition under HRS Chapters 480 and 481 against Kona's Best in the First Amended Counterclaim and against Roberts and Hight in the First Amended Third-Party Complaint.[17/]  The jury found Kona's Best liable for unfair competition, but only awarded $1 in damages; the jury found Roberts and Hight not liable for unfair competition.  The Circuit Court subsequently granted Kona's Best's motion for judgment as a matter of law on the unfair competition claim.  On appeal, the Mountain Thunder Defendants argue that the Circuit Court erred in granting Kona's Best's motion for judgment as a matter of law on their unfair competition claim and in instructing the jury on that claim.  We disagree.

### 1.

The Mountain Thunder Defendants alleged that the Kona's Best Appellants violated HRS § 480-2 (2008), which authorizes claims for (1) unfair or deceptive acts or practices and (2) unfair methods of competition, and they sought damages pursuant to HRS § 480-13 (2008).  A claim for unfair or deceptive acts or practices can only be brought by "a consumer, the attorney

---

[16/] In light of the involuntary bankruptcy petition filed against Mountain Thunder, the portions of the cross-appeal by Mountain Thunder that seek to overturn the judgment entered in favor of Kona's Best and against Mountain Thunder on claims raised in Kona's Best's First Amended Complaint and the award of attorney's fees in favor of Kona's Best and against Mountain Thunder are stayed, and we will not decide these portions of Mountain Thunder's cross-appeal.

[17/] As previously noted, the Mountain Thunder Defendants essentially alleged the same causes against Kona's Best in their First Amended Counterclaim that they alleged against Roberts and Hight in their First Amended Third-Party Complaint.  Unless otherwise indicated, our reference to the Mountain Thunder Defendants' claims in Sections II.A through II.G, infra, refer to their claims against Kona's Best, Roberts, and Hight.  The jury and the Circuit Court resolved all claims asserted by the Mountain Thunder Defendants against Roberts and Hight in the First Amended Third-Party Complaint in favor of Roberts and Hight.

NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

general or the director of the office of consumer protection[.]" HRS § 480-2(d).  The Mountain Thunder Defendants did not qualify as consumers as defined by HRS § 480-1 (2008),[18] and they were not the attorney general or the director of the office of consumer protection.  Therefore, the Circuit Court properly granted judgment as a matter of law on the unfair or deceptive acts or practices claim.  See Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc., 107 Hawaiʻi 423, 435-36, 114 P.3d 929, 941-42 (App. 2005) (concluding that the purpose of the unfair or deceptive acts or practices provision is to protect individual consumers rather than businesses).

To prevail on a claim for unfair methods of competition, the claimant must prove what is referred to as "antitrust injury."  Robert's Hawaii, 91 Hawaiʻi at 254 n.31, 982 P.2d at 883 n.31.

> "Plaintiffs must prove an injury of the type the antitrust laws were intended to prevent, one that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitve acts made possible by the violation."

Id. (citation, brackets, and ellipses points omitted).  As such, the plaintiff must allege and show that the defendant's conduct "will negatively affect competition in order to recover on an unfair methods of competition claim."  See Davis v. Four Seasons Hotel Ltd., 122 Hawaiʻi 423, 437-38, 228 P.3d 303, 317-18 (2010).  "[E]ven where a plaintiff alleges a per se violation of the antitrust laws, the plaintiff must still allege and prove antitrust injury by alleging the nature of the competition in order to ensure that the injury results from a competition-reducing aspect of the defendant's behavior."  Id. at 445, 228 P.3d at 325.

---

[18] HRS § 480-1 defines a "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."

Here, the Mountain Thunder Defendants did not sufficiently allege an antitrust injury in their pleadings; they alleged injuries to Mountain Thunder, but did not sufficiently allege injury to competition in the relevant market. See id. at 445-46 228 P.3d at 325-26. In addition, the Mountain Thunder Defendants did not prove antitrust injury at trial. The Mountain Thunder Defendants' experts only discussed the potential harm of the alleged unfair methods of competition to Mountain Thunder's own business, and not their effect on competition in the market. The Circuit Court therefore properly granted judgment as a matter of law on the unfair methods of competition claim.

2.

The Mountain Thunder Defendants contend that they showed a violation of HRS § 481-3 (2008), which prohibits any person or association doing business in the State to sell or offer for sale any product at less than cost "with the intent to destroy competition." Although evidence was presented at trial that Kona's Best sold a small portion of its coffee inventory below cost, there was undisputed evidence that Kona's Best had attempted to sell this inventory at a profit, or at a break-even price, and only resorted to selling below cost because the aging of the coffee was diminishing its value. We conclude that the Circuit Court properly granted judgment as a matter of law on the Mountain Thunder Defendants' HRS § 481-3 claim.

3.

The Mountain Thunder Defendants argue that the Circuit Court erred in instructing the jury on unfair competition. Based on our conclusion that the Circuit Court properly granted judgment as a matter of law on the Mountain Thunder Defendants' unfair competition claim, any error in instructing the jury on this claim was harmless. In any event, the Circuit Court's instruction was based on standards set forth in Hawai'i precedents and was a correct statement of the law. See Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n, Inc., 113 Hawai'i 77, 113-14, 148 P.3d 1179, 1215-16 (2006); Roberts Hawaii, 91

Hawai'i at 255 n.34, 982 P.2d at 884 n.34. The Circuit Court's failure to give the additional instructions requested by the Mountain Thunder Defendants did not render the instructions given "prejudicially insufficient, erroneous, inconsistent, or misleading." Nelson v. Univ. of Hawai'i, 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001).

B. Misappropriation of Trade Secrets

The Mountain Thunder Defendants contend that the Circuit Court erred in granting judgment as a matter of law on their misappropriation of trade secrets claim. We disagree.

A trade secret is defined under HRS Chapter 482B as

information, including a formula, pattern, compilation, program device, method, technique, or process that:

    (1)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    (2)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

HRS § 482B-2 (2008).

The Mountain Thunder Defendants contend that the Kona's Best Appellants misappropriated their trade secrets through breaches of the confidentiality agreements. They emphasize that the Kona's Best Appellants had no experience in the Kona coffee business before meeting the Batemans. However, Kona's Best purchased Koa Coffee and hired its owner, Artukovich, an experienced coffee producer who was described as Trent Bateman's mentor, as a consultant to help run Kona's Best. The Mountain Thunder Defendants did not present specific evidence of the information they claimed constituted trade secrets or why such information qualified as trade secrets. Their general claims that the Kona's Best Appellants obtained information about Mountain Thunder's business operations was insufficient to prove that the Kona's Best Appellants had misappropriated trade secrets.

C.   Promissory Estoppel

The Mountain Thunder Defendants brought two claims for promissory estoppel based on allegations regarding the Kona's Best Appellants': (1) promise to provide financing to Mountain Thunder (Promissory Estoppel -- Financing); and (2) promise to pay for Mountain Thunder's services in purchasing and processing coffee for Kona's Best (Promissory Estoppel -- Nonpayment).   In its Order Regarding Equitable Claims, the Circuit Court granted judgment on both promissory estoppel claims in favor of the Kona's Best Appellants.   The Mountain Thunder Defendants argue that the Circuit Court's erred in doing so.   We disagree.

"The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of the appellant."   Aickin v. Ocean View Invs. Co., 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (internal quotation marks, citation, and brackets omitted).

1.

With respect to the Mountain Thunder Defendants' Promissory Estoppel -- Financing claim, the Circuit Court found and concluded as follows:

> 11.   No evidence was presented at trial to suggest that [Kona's Best] promised to provide general financing.
>
> 12.   Likewise, no evidence was presented at trial regarding a specific amount of financing, repayment terms, or collateral.
>
> 13.   A promise to provide financing is impermissibly indefinite.   Any reliance by [the Mountain Thunder] Defendants on such a vague promise would be unreasonable and unjustified.
>
> 14.   No evidence was presented at trial regarding the specifics of other opportunities that [the Mountain Thunder] Defendants supposedly relinquished due to promises by [Kona's Best].   The alleged loss claimed under Count V is therefore speculative and incalculable.

36

15.    Based on the foregoing, judgment is entered in favor
of [the Kona's Best Appellants] on Count V.

(Citations omitted.)

We conclude that the Circuit Court's findings were supported by substantial evidence and that it did not err in entering judgment in favor of the Kona's Best Appellants on the Promissory Estoppel -- Financing claim.  See Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 142 (Tex. Ct. App. 1999) (concluding that the reliance on a promise must be reasonable or justified); West Indies Network-I, LLC v. Nortel Networks, (CALA) Inc., 243 Fed. Appx. 482, 485 (11th Cir. 2007) (upholding determination that the alleged commitment to secure equity financing "was too indefinite and uncertain to support promissory estoppel").

2.

With respect to the Mountain Thunder Defendants' Promissory Estoppel -- Nonpayment claim, the Circuit Court granted judgment against the Mountain Thunder Defendants because it concluded that they had an adequate remedy at law based on their Breach of Contract Claims.  We agree with the Circuit Court's conclusion that the Mountain Thunder Defendants had an adequate remedy at law and affirm its decision on the Promissory Estoppel -- Nonpayment claim.  See Bd. of Dirs. of Ass'n of Apartment Owners of Regency Tower Condo. Project v. Regency Tower Venture, 2 Haw. App. 506, 513, 635 P.2d 244, 249 (1981) ("'The necessary prerequisite to the right to maintain a suit for . . . equitable remedies is . . . the absence of an adequate remedy at law.'" (citation omitted)); Porter v. Hu, 116 Hawai'i 42, 55, 169 P.3d 994, 1007 (App. 2007).

D.    Fraud

In its special verdict, the jury found in favor of the Kona's Best Appellants on the Mountain Thunder Defendants' fraud claim.  On appeal, the Mountain Thunder Defendants contend that the Circuit Court erred in relying on the jury's verdict and dismissing this claim.

37

The Mountain Thunder Defendants contend that Roberts falsely represented he would make the Batemans' dreams of breaking into the mainland coffee market come true and thereby fraudulently induced the Batemans to divulge Mountain Thunder's trade secrets and other confidential information, which Kona's Best then used to compete against Mountain Thunder. We conclude that there was substantial evidence to support the jury's verdict rejecting the Mountain Thunder Defendants' fraud claim. Pursuant to the jury's verdict, the Circuit Court properly entered judgment against the Mountain Thunder Defendants on this claim.

E. Unjust Enrichment

The Mountain Thunder Defendants contend that the Circuit Court erred in granting judgment in favor of the Kona's Best Appellants on the Mountain Thunder Defendants' unjust enrichment claim. We disagree.

In its Order Regarding Equitable Claims, the Circuit Court found and concluded as follows:

18. To prevail on a claim for unjust enrichment, a party must prove that he/she/it conferred a benefit upon the opposing party and that the retention of that benefit would be unjust.

19. Like promissory estoppel, unjust enrichment is an equitable claim. Equitable relief is not available to a party that has an adequate remedy at law.

20. To the extent that Count XII is based on misuse of confidential proprietary information or trade secrets, it is preempted by Hawaii Revised Statutes Chapter 482B.

21. To the extent that Count XII is based on breach of confidentiality agreements or agreements relating to coffee, [the Mountain Thunder] Defendants have adequate contractual remedies at law.

22. Moreover, [the Mountain Thunder] Defendants never established that they provided [Kona's Best] with confidential information, or the value of this supposed benefit.

23. No competent evidence was presented at trial which indicates that [Kona's Best] was provided with coffee it did not pay for.

24.     Based on the foregoing, judgment is entered in favor
        of [the Kona's Best Appellants] on Count XII.

(Citations omitted.)

We conclude that the Circuit Court's findings were supported by substantial evidence and that it did not err in entering judgment in favor of the Kona's Best Appellants on the unjust enrichment claim.

## F.  Defamation

The Mountain Thunder Defendant contend that the Circuit Court erred in dismissing their defamation claim.  The Mountain Thunder Defendants identify two statements they apparently claim were defamatory: (1) Artukovich's purported statement that Kona's Best would not deal with Hawaii Coffee if Hawaii Coffee did business with Mountain Thunder; and (2) Hight's alleged statement to a Kona's Best employee that Kona's Best would put Trent out of business if Trent did not agree to the terms offered for the asset purchase.  Assuming these statements were made, they were not defamatory.  See Gold v. Harrison, 88 Hawai'i 94, 100-01, 962 P.2d 353, 359-60 (1998); Restatement (Second) of Torts § 559 (1997).  Accordingly, the Circuit Court did not err in dismissing the defamation claim.

## G.  Intentional Infliction of Emotional Distress

The Mountain Thunder Defendants contend that the Circuit Court erred in granting summary judgment in favor of the Kona's Best Appellants on the Mountain Thunder Defendants' claim for intentional infliction of emotional distress.  We disagree.

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove that the conduct allegedly causing the harm was "outrageous."  Hac v. Univ. of Hawai'i, 102 Hawai'i 92, 95, 73 P.3d 46, 49 (2003).  The standard for outrageous conduct is high:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Dunlea v. Dappen, 83 Hawai'i 28, 38, 924 P.2d 196, 206 (1996)

(quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Here, even viewing the evidence in the light most favorable to the Mountain Thunder Defendants, the alleged conduct, as a matter of law, did not rise to the level of outrageous conduct. Accordingly, the Circuit Court properly granted summary judgment on the claim of intentional infliction of emotional distress.

## H.  Expert Evidence

After negotiations over the purchase of Mountain Thunder's assets were terminated, Steven Kaufman, Kona's Best's accountant, performed an accounting in an attempt to trace the coffee purchased by Mountain Thunder for Kona's Best and to determine how much was owed to Kona's Best.  Kaufman reconciled the purchases and move slips provided by the Mountain Thunder Defendants with the inventories held at Mountain Thunder and created a report (Kaufman Report) explaining the outcome of his reconciliation efforts.  Kaufman determined that Mountain Thunder had sold roasted and green coffee out Kona's Best's inventory and that Mountain Thunder owed Kona's Best a substantial amount of money.

During trial, Kona's Best's expert witness, Daniel Bowen (Bowen), presented his expert opinion which relied on information in the Kaufman Report.  Kaufman did not testify.  On appeal, the Batemans claim that the Circuit Court erred in allowing Bowen to testify and allowing Kona's Best to, in effect, introduce the Kaufman Report through Bowen.  However, the transcript of Bowen's trial testimony was not included in the record on appeal.  The Batemans have the duty to provide this court with an adequate record regarding their claims on cross-appeal and the burden of establishing that the Circuit Court erred.  See Hawai'i Rules of Appellate Procedure Rule 10 (2012) and Rule 11 (2010).  Without a transcript of Bowen's trial testimony, we cannot say that the Circuit Court erred.

The Batemans also argue that the Circuit Court erred in permitting Kona's Best to name Bowen and Mark Hunsaker (Hunsaker)

40

as experts after the trial had been continued.  We disagree.  The Circuit Court continued the trial to permit Kona's Best to amend its complaint to add a claim for fraudulent transfer of assets. The trial continuance also extended the deadline for naming expert witnesses, and Bowen and Hunsaker were named as experts within the extended deadline.  We conclude that there was no error in the Circuit Court's permitting Bowen and Hunsaker to be named as experts.

### I.  Net Judgment Rule

The Batemans argue that the Circuit Court erred in not applying the net judgment rule.  Contrary to the Batemans' contention, <u>Shanghai Investment Co. v. Alteka Co.</u>, 92 Hawai'i 482, 993 P.2d 516 (2000), does not require the use of the net judgment rule to determine the prevailing party.  We reject the Batemans' argument regarding the net judgment rule.[19]

### CONCLUSION

Based on the foregoing, we reverse the Amended Judgment to the extent that it entered judgment in favor of the Mountain Thunder Defendants and against Kona's Best on Count IX of the Mountain Thunder Defendants' First Amended Counterclaim for tortious interference with prospective business advantage; we affirm the Amended Judgment with respect to its entry of judgment on all other Counts asserted by the Mountain Thunder Defendants in their First Amended Counterclaim and its entry of judgment on all Counts asserted by the Mountain Thunder Defendants in their First Amended Third-Party Complaint; we affirm the Amended Judgment with respect to its entry of judgment as between Kona's Best and the Batemans on Counts asserted by Kona's Best in its First Amended Complaint; and we affirm the Amended Judgment to

---

[19] In light of the involuntary bankruptcy petition filed against Naturescape, Naturescape's cross-appeal, which seeks to overturn the judgment entered in favor of Kona's Best and against Naturescape on Kona's Best's First Amended Complaint, is stayed, and we will not decide Naturescape's cross-appeal.

the extent that it awarded attorney's fees to Kona's Best and against the Batemans.

DATED: Honolulu, Hawai'i, August 2, 2017.

On the briefs:

Joseph Fagundes, III
(AAL, ALC)
George W. Playdon, Jr.
Kelvin H. Kaneshiro
(O'Connor Playdon & Guben LLP)
for Plaintiff/Counterclaim-Defendant/
    Appellant/Cross-Appellee and
    Third-Party Defendants/Appellants/
    Cross-Appellees

Grant K. Kidani
(Kidani Law Center)
for Defendants/Counterclaimants/
    Appellees/Cross-Appellants and
    Third-Party Plaintiffs/Appellees/
    Cross-Appellees

_Craig H. Nakamura_
Chief Judge

_Lawrence M. Reifurth_
Associate Judge

42